1

2

3

4

**BAKER LAW PC**
G. RICHARD BAKER (State Bar No. 224003)
E-mail:  richard@bakerlawpc.com
2229 First Avenue North
Birmingham, AL 35203
Telephone:  (205) 714-7166
Facsimile:  (205) 252-3536

5

6

7

8

9

**JACKSON & TUCKER PC**
JOSH TUCKER (*admitted pro hac vice*)
E-mail:  josh@jacksonandtucker.com
K. STEPHEN JACKSON (*admitted pro hac vice*)
E-mail:  steve@jacksonandtucker.com
2229 First Avenue North
Birmingham, AL 35203
Telephone:  (205) 252-3535
Facsimile:  (205) 252-3536

10

11

12

13

14

**WILENTZ, GOLDMAN & SPITZER, P.A.**
KEVIN P. RODDY (State Bar No. 128283)
E-mail:  kroddy@wilentz.com
DANIEL R. LAPINSKI (admitted *pro hac vice*)
E-mail:  dlapinski@wilentz.com
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ
Telephone:  (732) 636-8000
Facsimile:  (732) 726-6686

15

**Interim Lead Counsel for Plaintiffs and the Proposed Class**

16

## IN THE UNITED STATES DISTRICT COURT

17

## FOR THE EASTERN DISTRICT OF CALIFORNIA

18

19

20

21

22

23

| | |
|---|---|
| FRANCES VON KOENIG and GUY CADWELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SNAPPLE BEVERAGE CORPORATION,<br><br>Defendant. | Case No. 09-CV-00606 FCD EFB<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Judge:      Hon. Frank C. Damrell, Jr.<br>Date:        May 7, 2010<br>Time:        10:00 am<br>Courtroom:  1 |

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2
**PAGE**

3

I.  INTRODUCTION ...................................................................................... 1

4

II.  SUMMARY OF ARGUMENT ................................................................. 1

5

III.  STATEMENT OF FACTS ....................................................................... 3

6      A.  The Standards Governing Snapple's Motion To Dismiss ...................... 3

7      B.  Summary Of Plaintiffs' Factual Allegations ........................................... 5

8      C.  Snapple's Factual Assertions .................................................................. 7

9

IV.  DISCUSSION OF AUTHORITY ............................................................. 9

10     A.  Plaintiff's Claims Are Not Barred By The "Safe Harbor" Doctrine ...... 9

11     B.  Plaintiffs' Claims Are Pled With Requisite Specificity......................... 12

12     C.  Plaintiffs Have Properly Pled Claims Under The UCL, FAL And CLRA........... 15

13     D.  Plaintiffs Have Pled "Unfair" And "Unlawful" Business Practices Under The UCL .............................................................................. 18

14

V.  CONCLUSION ........................................................................................ 21

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**PAGE**

### CASES

*Ahmadyar v. First Horizon Home Loans,*
  2010 U.S. Dist. LEXIS 28272 (E.D. Cal. Mar. 25, 2010) (Burrell, J.) ............................ 4, 16

*Alvarez v. Chevron Corp.,*
  2009 WL 5552497,  2009 U.S. Dist. LEXIS 94377 (C.D. Cal. Sept. 30, 2009) .................. 10

*Ashcroft v. Iqbal,*
  ___ U.S. ___, 129 S. Ct. 1937 (2009) ...................................................................... 5

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................................... 5

*Cahill v. Liberty Mut. Ins. Co.,*
  80 F.3d 336 (9th Cir. 1996) ................................................................................. 4

*Cel-Tech Comms., Inc. v. Los Angeles Cellular Tele. Co.,*
  20 Cal. 4th 163, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999) ........................................ 10, 19

*Colgan v. Leatherman Tool Grp., Inc.,*
  135 Cal. App. 4th 663, 38 Cal. Rptr. 2d 36 (2006) .................................................... 17

*Faigman v. AT&T Mobility LLC,*
  2007 WL 2088561, 2007 U.S. Dist. LEXIS 52192 (N.D. Cal. July 18, 2007) .................. 12

*Germain v. J.C. Penney Co.,*
  2009 WL 1971336, 2009 U.S. Dist. LEXIS 60936 (C.D. Cal. July 6, 2009) .................... 15

*Glow Indus. Inv. v. Lopez,*
  252 F. Supp. 2d 962 (C.D. Cal. 2002) .................................................................... 17

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
  896 F.2d 1542 (9th Cir. 1989) ............................................................................. 4

*Hall v. Time, Inc.,*
  158 Cal. App. 4th 847, 70 Cal. Rptr. 3d 466 (2008) .................................................. 20

*Hitt v. Arizona Beverage Co., LLC,*
  2009 WL 449190, 2009 U.S. Dist. LEXIS 16871 (S.D. Cal. Feb 4, 2009) ............... 3, 14, 17

*Holk v. Snapple Beverage Corp.,*
  575 F.3d 329 (3d Cir. 2009) ............................................................................... 10

*In re Amgen, Inc. Secs. Litig.,*
  544 F. Supp. 2d 1009 (C.D. Cal. 2008) .................................................................. 4

*In re Motor Fuel Temperature Sales Pracs. Litig.,*
  534 F. Supp. 2d 1214 (D. Kan. 2008) .................................................................... 11

*Johnson & Johnson * Merck Consumer Pharmaceutical Co. v. Smithkline Beecham Corp.,*
  960 F.2d 294 (2d Cir. 1992) ............................................................................... 17

**TABLE OF AUTHORITIES (cont'd)**

*Kasky v. Nike, Inc.,*
 27 Cal. 4th 939, 119 Cal. Rptr. 2d 296, 45 P.3d 243 (Cal. 2002) ........................ 19

*Kearns v. Ford Motor Co.*
 567 F.3d 1220 (9th Cir. 2009) .................................................................. 12, 14

*Knipe v. SmithKline Beecham,*
 583 F. Supp. 2d 553 (E.D. Pa. 2008)............................................................. 11

*Koh v. S.C. Johnson & Son, Inc.,*
 2010 WL 94265, 2010 U.S. Dist. LEXIS 654 (N.D. Cal. Jan. 6, 2010)............... 20

*Lockwood v. ConAgra Foods, Inc.,*
 597 F. Supp. 2d 1028 (N.D. Cal. 2009)........................................................... 11

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
 519 F.3d 1025 (9th Cir. 2008) ...................................................................... 14

*McKell v. Washington Mut., Inc.,*
 142 Cal. App. 4th 1457, 49 Cal. Rptr. 2d 227 (2006) ........................................ 17

*McKinniss v. Kellogg USA*
 2007 WL 4766060, 2007 U.S. Dist. LEXIS 96106 (C.D. Cal. Sept. 19, 2007).................... 4

*Monarch Plumbing Co. v. Ranger Ins. Co.,*
 2006 WL 2734391, 2006 U.S. Dist. LEXIS 68850 (E.D. Cal. Sept. 25, 2006)
 (Shubb, J.)................................................................................................ 20

*Nordberg v. Trilegiant Corp.,*
 445 F. Supp. 2d 1082  (N.D. Cal. 2006)........................................................... 12

*People v. McKale,*
 25 Cal. 3d 626, 159 Cal. Rptr. 811, 602 P.2d 731 (1979) ................................. 19

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.,*
 642 F. Supp. 2d 1112 (C.D. Cal. 2009)......................................................... 4, 14

*Schnall v. The Hertz Corp.,*
 78 Cal. App. 4th 1144, 93 Cal. Rptr. 2d 439 (2000) ..................................... 10, 19

*Stickrath v. Globalstar, Inc.,*
 527 F. Supp. 2d 992 (N.D. Cal. 2007)............................................................. 14

*Sugawara v. Pepsico, Inc.*
 2009 WL 143915, 2009 U.S. Dist. LEXIS 43127 (E.D. Cal. May 21, 2009)
 (England, J.)............................................................................................ 4, 5

*Vess v. Ciba-Geigy Corp.,*
 317 F.3d 1097 (9th Cir. 2003) ...................................................................... 14

*Von Grabe v. Sprint PCS,*
 312 F. Supp. 2d 1285 (S.D. Cal. 2003) ........................................................... 12

*VP Racing Fuels, Inc. v. General Petroleum Corp.,*
 673 F. Supp. 2d 1073 (E.D. Cal. 2009) (England, J.).................................... 15, 16

### TABLE OF AUTHORITIES (cont'd)

PAGE

*Walling v. Beverly Enterprises,*
  476 F.2d 393 (9th Cir. 1973) ................................................................................. 15

*Williams v. Gerber Prods. Co.,*
  552 F.3d 934 (9th Cir. 2008) ......................................................................... passim

*Wright v. General Mills, Inc.,*
  2009 WL 3247148, 2009 U.S. Dist. LEXIS 90576 (N.D. Cal. Sept. 30, 2009) ..................... 4

**COURT RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 3

Fed. R. Civ. P. 8(a)(2) ..................................................................................................... 5

Fed. R. Civ. P. 9(b) .......................................................................................... 12, 14, 15

Fed. R. Evid. 201(b) ........................................................................................................ 4

**STATUTES AND REGULATIONS**

Cal. Bus. & Prof. Code § 17200 *et seq.* ......................................................................... 3

Cal. Bus. & Prof. Code § 17500 *et seq.* ......................................................................... 3

Cal. Civ. Code § 1750 *et seq.* ....................................................................................... 3

7 C.F.R. § 205.2 ............................................................................................................... 8

21 C.F.R. § 10.85(D), (J) ................................................................................... 8, 10, 11

21 C.F.R. §§ 10.85(d)(1), (e) & (g) ............................................................................... 11

21 C.F.R. § 184.1866 ....................................................................................................... 8

1

**TABLE OF AUTHORITIES (cont'd)**

2

**PAGE**

3

4

**OTHER AUTHORITIES**

FDA Food Additive Status List (Mar. 2009)................................................................. 8

FDA, *Food Labeling:  Nutrient Content Claims, General Principles, Petitions,
    Definition of Terms,* 56 Fed. Reg. 60421, (Nov. 27, 1991)..................................... 7

FDA, *Food Labeling:  Nutrient Content Claims, General Principles, Petitions,
    Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty
    Acid, and Cholesterol Content of Food,* 58 Fed. Reg. 2302, (Jan. 6, 1993)........................ 7

H.D. Belitz, W. Grosch & P. Schieberle, FOOD CHEMISTRY (Springer 4th rev. ed.
    2009).......................................................................................... 9

John M. deMan, PRINCIPLES OF FOOD CHEMISTRY (AVI Pub. Co. 1980).................................... 9

SAFE FACTORS IN FOOD PROCESSES - CHAPTER II, *Production Practices as Risk
    Factors in Microbial Food Safety of Fresh and Fresh-Cut Produce Part IV* ...................... 8

William L. Stern, BUS. & PROF. C. § 17200 PRACTICE §§ 5:127-5:135 (Rutter
    Group 2010)................................................................................... 11

I.      **INTRODUCTION**

Plaintiffs, Frances Von Koenig and Guy Cadwell, by the undersigned Interim Lead Counsel, hereby file their Opposition to the Motion to Dismiss Corrected Consolidated Class Action Complaint (hereinafter "CAC, ¶ __) (Document 67 – filed Dec. 28, 2009), filed by Defendant, Snapple Beverage Corporation (hereinafter "Snapple" and "Snapple Memo. at __") (Document 69 – filed Jan. 4, 2010). For the reasons stated herein, Snapple's Rule 12(b)(6) motion is without merit and should be denied by this Court.

II.     **SUMMARY OF ARGUMENT**

This case is brought by Plaintiffs on behalf of themselves and the members of the Proposed Class, alleging violations of California's consumer protection statutes, based on the actions of Defendant Snapple in marketing, promoting, labeling and branding beverages that contain High Fructose Corn Syrup ("HFCS") as being "All Natural," which is alleged to be misleading to reasonable California consumers. CAC, ¶¶ 1-7, 19-38.[1]

What a product is made of clearly affects the product's quality and, therefore, its cost to consumers. In particular, consumers are increasingly interested in purchasing "natural" foods and beverages and are willing to pay more money for them than other foods and beverages. As a recent report published by the Food Marketing Institute explains, "[s]urging demand for natural and organic products has transformed a small market niche into a double-digit growth sector. U.S. sales of such foods and beverages reached \$31.0 billion in 2007." FMI Backgrounder, *Natural    and    Organic    Foods* (Sept.    2008),    available    at:

---

[1]    The proposed Class is defined as "[a]ll persons in California who purchased for personal or household consumption any of [Snapple's] "All Natural Products" which contained [HFCS] during the 'Class Period' and which were marketed, advertised, branded or labeled as being 'All Natural' or similar terms." CAC, ¶ 40. The "Class Period" is defined as being "the four (4) years immediately preceding the original filing of this action on March 4, 2009." *Id.,* ¶ 42.

http://ww.fmi.org/docs/media/bg/natural_organic_foods.pdf.    As the U.S. Food & Drug Administration ("FDA") has recognized, the terms "natural" or "all natural" are used to convey to consumers that a food or beverage is somehow more wholesome, and that "natural" (or "all natural") claims are confusing and misleading to reasonable consumers and frequently breach the public's legitimate expectations about their meaning. *See* Part III.C, *infra.*

Under controlling and persuasive precedents, Snapple's motion to dismiss must fail for three reasons. *First,* because no law, state or federal, endorses Snapple's misleading and deceptive practices, as alleged in Plaintiffs' CAC, Defendant's "safe harbor" argument necessarily fails. *Compare* Part IV.A, *infra,* with Snapple Memo. at 5-9. No matter how Defendant attempts to characterize its labeling, branding, labeling, marketing and/or advertising the drink products at issue, there is no law that ***endorses*** the actions Plaintiff has alleged as being deceptive and/or misleading. To the contrary, in the words of the Ninth Circuit:

> The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Williams v. Gerber Prods. Co.,* 552 F.3d 934, 939-940 (9th Cir. 2008). As the Ninth Circuit recognized in that case, a food or drink manufacturer's purported compliance with FDA regulations does not "automatically shield it from liability under" California's consumer protection laws. *Id.* at 940.[2] Thus, for this Court to provide Defendant with a "safe harbor,"

---

[2]    This proposed class action is analogous to *Williams,* wherein parents of small children brought a class action against Gerber, alleging that it deceptively marketed its "Fruit Juice Snacks," a food product, because a side panel of the packaging described the product as made "with real fruit juice and other all natural ingredients." 552 F.3d at 936. Under the Ninth

1    simply because it purportedly complied with FDA regulations, would be contrary to the law of

2    this Circuit.

3        **Second,** contrary to Snapple's assertions, *see* Snapple Memo. at 9-11, Plaintiffs have

4    more than satisfied the pleading requirements of FED. R. CIV. P. 8(a) and 9(b), as applicable to

5

6    Plaintiffs' state law claims asserted in this proposed class action. *See* Part IV.B, *infra.* The

7    CAC describes with requisite particularity Snapple's deceptive labeling, marketing, advertising

8    and promotion of its "All Natural" drink products.

9        **Finally,** as set forth herein:  (a) the First, Third, Fourth and Fifth Causes of Action of

10   the CAC properly state claims for violations of the Unfair Competition Law ("UCL"), CAL.

11   BUS. & PROF. CODE § 17200 *et seq.*; (b) the Second Cause of Action properly states a claim for

12   violations of the False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE § 17500 *et seq.*;

13

14   and (c) the Sixth Cause of Action properly states a claim for violations of the Consumers Legal

15   Remedies Act ("CLRA"), CAL. CIV. CODE § 1750 *et seq.  Compare* Part IV.C, *infra,* with

16   Snapple Memo. at 11-16.

17   **III.    STATEMENT OF FACTS**

18       **A.    The Standards Governing Snapple's Motion To Dismiss**

19       For purposes of Snapple's Rule 12(b)(6) motion to dismiss Plaintiffs' CAC, "all

20   allegations of material fact must be accepted as true and construed in the light most favorable to

21

22   Circuit's holding in that case, *see id.* at 938-939, there are a number of features of Defendant's
     beverage packaging to be considered in this case, which makes dismissal of this action
23   inappropriate. Viewing the CAC's allegations in the light most favorable to Plaintiffs, the facts
     of this case do not amount to the rare situation in which granting a motion to dismiss is
24   appropriate, and Plaintiffs should be able to submit evidence to demonstrate whether a
     reasonable consumer would find the labeling on the subject beverages to be deceptive. *See Hitt*
25   *v. Arizona Beverage Co., LLC,* 2009 WL 449190, 2009 U.S. Dist. LEXIS 16871, **1-2, 16-19
     (S.D. Cal. Feb 4, 2009) (following Ninth Circuit's decision in *Williams* and refusing to dismiss
26   proposed class action alleging that beverage manufacturer promoted certain drink products as
     "100% Natural," "All Natural," or "Natural"). In its brief, Snapple ignores both *Williams* and
27   *Hitt.*

28

the non-moving party." *Sugawara v. Pepsico, Inc.,* 2009 WL 143915, *2, 2009 U.S. Dist. LEXIS 43127, *4 (E.D. Cal. May 21, 2009) (England, J.) (citing *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996)).[3]  To avoid dismissal, Plaintiffs must allege "only enough facts to state a claim to relief that is plausible on its face." *Ahmadyar v. First Horizon Home Loans,* 2010 U.S. Dist. LEXIS 28272, *2 (E.D. Cal. Mar. 25, 2010) (Burrell, J.) (quoting *Bell*

---

[3]     "Generally, a district court 'may not consider any material beyond the pleadings' on a motion to dismiss (e.g., facts presented in briefs, affidavits, or discovery materials)." *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.,* 642 F. Supp. 2d 1112, 1117 (C.D. Cal. 2009) (quoting *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n.10 (9th Cir. 1989)). "Therefore, the Court ***declines*** to consider the parties' additional evidence and denies Defendant's request for judicial notice of a [FDA] ***warning letter*** sent to it regarding its internet marketing" of the juice products in question. *Id.* (emphasis added).

    In this case, Snapple asks this Court to take judicial notice of a variety of FDA "warning letters" attached as Exhibits A, C, D, E and F to the Request for Judicial Notice ("Snapple RJN") and accompanying Declaration of Norman C. Hile ("Hile Decl.") (Documents 70 & 72 – filed Jan. 4, 2010). Consistent with Judge Pregerson's decision in *Pom Wonderful,* 642 F. Supp. 2d at 1117, Plaintiffs object to Snapple's request. Because Plaintiffs' CAC refers to marketing, advertising, labeling and packaging of Defendant's "All Natural" drink products, we have no objection to this Court taking judicial notice of the ***label*** from a bottle of Snapple "Acai Blackberry All Natural Juice Drink" attached as Exhibit B to the Hile Decl. *See Wright v. General Mills, Inc.,* 2009 WL 3247148, *5, 2009 U.S. Dist. LEXIS 90576, *13 (N.D. Cal. Sept. 30, 2009) (taking judicial notice of "various labels and packaging items associated with the Nature Valley products" because "they serve as the basis for plaintiff's allegations") (slip opinion attached as Ex. G to Hile Decl.). However, there is no proper basis upon which this Court can take judicial notice of the FDA "warning letters," and Defendant Snapple's (Snapple Memo. at 1-2 n.2) are not to the contrary. *See McKinniss v. Kellogg USA,* 2007 WL 4766060, 2007 U.S. Dist. LEXIS 96106, *6-7 (C.D. Cal. Sept. 19, 2007) (court took judicial notice of "four color reproductions of the panels of four boxes of Froot Loops" cereal upon which plaintiffs based their claims); *In re Amgen, Inc. Secs. Litig.,* 544 F. Supp. 2d 1009, 1023 (C.D. Cal. 2008) (court took judicial notice of drug labels, SEC filings, and documents posted on FDA website that "were either referenced or quoted in" plaintiffs' amended complaint).

    In accordance with FED. R. EVID. 201(b) and Judge Lorenz's decision in *Wright,* 2009 U.S. Dist. LEXIS 90576, *13 (quoted above), Plaintiffs respectfully request this Court to take judicial notice of the bottle labels for "Snapple ALL NATURAL Peach Iced Tea"; "Snapple ALL NATURAL Raspberry Iced Tea"; and "Snapple ALL NATURAL Acai Blackberry Iced Tea." Color copies of those bottle labels are attached to Plaintiffs' Request for Judicial Notice in Support of Plaintiffs' Opposition to Motion to Dismiss Corrected Consolidated Class Action Complaint filed herewith.

*Atl. Corp. v. Twombly,* 550 U.S. 544, 547 (2007)).[4]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009)).  Consistent with Rule 8(a)(2), the following facts alleged in the CAC give Defendant Snapple "fair notice of what the … claim is and the grounds upon which it rests." *Sugawara,* 2009 WL 1439115, *2, 2009 U.S. Dist. LEXIS 43127, *4 (quoting *Twombly,* 550 U.S. at 570).

### B.    Summary Of Plaintiffs' Factual Allegations

Plaintiffs bring this action both on their own behalf and on behalf of a Class comprised of California consumers seeking to redress Defendant Snapple's deceptive, misleading and untrue advertising and unlawful, unfair and fraudulent business acts and practices, and misrepresentations of the quality and contents of the drinks related to the Defendant Snapple's "natural products."  As part of a scheme to make its "natural products" more appealing to consumers, boost sales and increase profits, Snapple prominently stated in marketing, advertising, labeling and packaging that its products were "All Natural."  A reasonable California consumer would, therefore, be under the impression and belief that all of the Defendant's drink products so labeled are "All Natural," meaning that the drink products did not contain man-made ingredients – specifically, HFCS.  The complicated process used to create HFCS does not occur in nature; in fact, no HFCS existed before 1957, the year when the chemical process necessary to create it was invented.  Therefore, any product containing HFCS cannot be "All Natural."

Terms such as "All Natural" are used by food and drink manufacturers, such as Snapple, to induce consumers, such as Plaintiffs and the members of the Class, into believing

---

[4]    No Westlaw citation is available for this decision.

that the product(s) being described contain(s) only naturally occurring ingredients, contain no chemically altered or man-made ingredients and, therefore, that the product(s) is (are) a more healthy choice than competing products. By using this "All Natural" marketing strategy, Snapple states or implies that its products are superior to, better than, more valuable, or more nutritious than competing products. Snapple uses HFCS in its products for a variety of reasons, all of which benefit its own monetary interests. Because HFCS is a man-made product that does not occur in nature, its use in Defendant's products which are labeled "All Natural"or similar language is deceptive and misleading to reasonable California consumers, including the Plaintiffs and the members of the Class which they seek to represent. On its product labels and in its advertising, Snapple does not mention that its "All Natural Products" contain HFCS, except in inconspicuous and hard-to-read type in the "Ingredients" statement on the back or sides of these products. Defendant also fails to disclose that HFCS is not a naturally occurring ingredient; nor would it be expected to be in the products at issue as the products are prominently labeled as "All Natural." Plaintiffs allege in their CAC that they naturally and reasonably relied on the labels and advertising created by Snapple and did not double-check those representations against the ingredient list in small type on the backs of the containers of the offending products.

In making their product purchases, Plaintiffs were looking for a natural, healthier beverage product. Plaintiffs allege that they (and the members of the Class) would have made different purchasing decisions had they known that the "All Natural" products contained the artificial ingredient HFCS. Alternatively, Plaintiffs allege that California consumers would have been willing to pay less money for the products if they were not mislabeled. CAC, ¶¶ 1-7, 10-12, 19-38, 39, 43(a)-(n) (allegations concerning Defendant's scheme, Plaintiffs' purchases

1    of Snapple products and their standing to sue, and class action allegations).

2        **C.      Snapple's Factual Assertions**

3            Seeking to minimize or defeat the CAC's well-pled facts, Snapple suggests that FDA

4    regulation is of utmost importance here; namely, the federal agency's view regarding terms

5    such as "natural" in beverage labeling and whether HFCS is "natural."  Snapple Memo. at 1, 4-

6    5.  To the contrary, however, the FDA does *not* define or regulate use of the terms "natural" or

7    "all natural."  The FDA recognizes that "natural" is "often used to convey that a food is

8    composed only of substances that are not man-made and is, therefore, somehow "more

9    wholesome."  Further, the FDA states that "[t]he meaning and use of the term 'natural' on the

10   label are of considerable interest to consumers," and that "[d]ata suggests that uses of 'natural'

11   claims are confusing and misleading to consumers and frequently breach the public's legitimate

12   expectations about their meaning."  FDA, *Food Labeling:  Nutrient Content Claims, General*

13   *Principles, Petitions, Definition of Terms,* 56 Fed. Reg. 60421, 60466 (Nov. 27, 1991).[5]

14   "[B]ecause of resource limitations and other agency priorities," the FDA has not yet defined

15   "natural" or "all natural," although the agency recognizes that doing so could "abate" "the

16   ambiguity" that "results in misleading claims."  FDA, *Food Labeling:   Nutrient Content*

17   *Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content*

18   *Claims for the Fat, Fatty Acid, and Cholesterol Content of Food,* 58 Fed. Reg. 2302, 2407 (Jan.

19   6, 1993).

20           Thus, although the FDA has adopted no definition of the operative term, it follows a

21   policy under which "natural" means that "nothing artificial or synthetic has been included in, or

---

[5]     As the FDA acknowledges, "[t]he terms 'natural,', and 'organic' *often cause
confusion.*"  FDA, *Food Label Helps Consumers Make Healthier Choices* (Mar. 2008)
(emphasis added), available at:
http://www.fda.gov/downloads/ForConsumers/ConsumerUpdates/UCM199361.pdf.

added to a food that would not normally be expected to be in the food." 58 Fed. Reg. at 2407.

This policy is binding on the FDA because it will not "recommend legal action against a person

or product with respect to an action taken in conformity" with it; however, it does ***not*** establish

any requirements that are binding on food and beverage manufacturers. 21 C.F.R. § 10.85(d),

(j).

> Notably, in an FDA glossary the term "synthetic" is defined as follows:

> A substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring processes.

7 C.F.R. § 205.2 (http://cfr.vlex.com/vid/205-2-terms-defined-19902659); *see also* SAFE

FACTORS IN FOOD PROCESSES - CHAPTER II, *Production Practices as Risk Factors in Microbial*

*Food Safety of Fresh and Fresh-Cut Produce Part IV,* available at http://www.fda.gov/Food/

ScienceResearch/ResearchAreas/SafePracticesforFoodProcesses/ucm091111.htm.)    (defining

term "synthetic" in exact same fashion).    Thus, if HFCS is "synthetic"—under the FDA's

definition—its inclusion in Snapple's drink products means they are not "natural" (or "all

natural").

HFCS is a sweetener. *See* 21 C.F.R. § 184.1866(a) (defining HFCS as a "saccharide").[6]

Even though its beverages contain HFCS—a synthetic substance—the CAC alleges that

Snapple deceptively labels and promotes them as being "all natural." Hile Decl., Exhibit B; *see*

note 3, *supra*.   HFCS does not occur in nature and is, instead, a man-made, highly processed

substance, as set forth below:

> a.    Corn Starch Becomes Corn Syrup:  Corn is a vegetable composed primarily of

---

[6]    *See also* FDA Food Additive Status List (listing HFCS as a "sweetener"), available at http://fda.gov/Food/FoodIngredientsPackaginig/FoodAddative/FoodAdditiveListitngs/ucm0910 48.htm (Mar. 2009).

starch, a complex carbohydrate made up of thousands to millions of individual glucose units bound together. Starch is too large to be absorbed by the human body. Starch does not have a sweet taste like its individual glucose parts; however, after enzymes break the bonds and liberate the individual glucose molecules, a sweet taste will be perceived. This is what takes place when starch is consumed by the human body—a series of carbohydrate digesting enzymes act on the starch and liberate the individual glucose parts as a prelude to absorption. Corn syrup is a sweet liquid composed of the individual glucose molecules that have been separated from corn starch using multistep process at a controlled temperature and pH. In this process, the corn starch is gradually broken down to smaller and smaller fragments and ultimately in pure glucose (dextrose). CAC, ¶¶ 21-29.[7]

b.    Corn Syrup Becomes HFCS:    Corn syrup contains virtually no fructose. Thorough the use of a specialized enzyme and a fixing agent, a portion of the glucose in corn syrup is converted to fructose. The manufacture of fructose is a chemical process that changes glucose, which was extracted from a naturally occurring plaint material (i.e., corn), into fructose. CAC, ¶¶ 21-29.

IV.    **DISCUSSION OF AUTHORITY**

A.    **Plaintiff's Claims Are Not Barred By The "Safe Harbor" Doctrine**

As set forth above, Plaintiffs' CAC asserts claims against Snapple for violations of the UCL, which proscribes "unfair, deceptive, untrue or misleading advertising"; the FAL, which bars "untrue or misleading" advertising; and the CLRA; in particular, Civ. Code § 1770(a)(5)

---

[7]    *See* H.D. Belitz, W. Grosch & P. Schieberle, FOOD CHEMISTRY (Springer 4th rev. ed. 2009); John M. deMan, PRINCIPLES OF FOOD CHEMISTRY (AVI Pub. Co. 1980).

and (7), which prohibit false representations regarding the ingredients, characteristics, or quality of goods. CAC, ¶¶ 49-111 (First-Sixth Causes of Action). In response, Snapple asserts that California's "safe harbor" rule bars Plaintiff's UCL claim(s) because that statute cannot prohibit labeling practices that it claims are expressly *allowed* by Congress and/or the FDA. Snapple Memo. at 1, 5-9. As stated herein, however, Snapple's labeling practices are *not* expressly allowed by federal law and, accordingly, the UCL's "safe harbor" rule *does not apply*.[8]

Snapple correctly asserts that "[w]hen specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Cel-Tech Comms., Inc. v. Los Angeles Cellular Tele. Co.*, 20 Cal. 4th 163, 182, 83 Cal. Rptr. 2d 548, 562, 973 P.2d 527, 541 (1999). Indeed, the very purpose of the "safe harbor" rule is to prevent plaintiffs from "plead[ing] around an absolute bar to relief simply by recasting the cause of action as one for unfair competition." *Id.* (internal quotes omitted). But the rule does not prohibit a UCL claim "merely because some other statute on the subject does not, itself, provide for the action or prohibit the challenged conduct. To forestall an action under the unfair competition law, another provisions must actually 'bar' the action or clearly permit the conduct." *Id.* As the California courts have noted, "[t]here is a difference between (1) not making an activity unlawful, and (2) making that activity lawful." *Alvarez v. Chevron Corp.*, 2009 WL 5552497, *6, 2009 U.S. Dist. LEXIS 94377, *18 (C.D. Cal. Sept. 30, 2009) (quoting *Schnall v. The Hertz Corp.*, 78 Cal. App. 4th 1144, 1162, 93 Cal. Rptr. 2d 439, 452 (2000)).

In this case, federal law does neither. As previously stated, the FDA's policy on "natural" constitutes, at most, an "advisory opinion." 21 C.F.R. § 10.85(d). Although the

---

[8]    Acknowledging the Third Circuit's decision in *Holk v. Snapple Beverage Corp.*, 575 F.3d 329 (3d Cir. 2009), Defendant concedes that Plaintiffs' state law claims are *not* preempted by federal law. Snapple Memo. at 9 n.5.

agency is obligated to follow the advisory opinion, *see id.,* § 10.85(e), it does ***not*** impose ***any*** requirements on regulated companies. *Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d 1028, 1033 (N.D. Cal. 2009); *see also Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 553, 575 (E.D. Pa. 2008) (citing 21 C.F.R. §§ 10.85(d)(1), (e) & (g)). Indeed, FDA regulations state that an advisory opinion "may be used in … court proceedings to illustrate acceptable or unacceptable procedures or standards, ***but not as a legal requirement***." 21 C.F.R. § 10.85(j) (emphasis added). Thus, because Snapple's "All Natural" labeling is ***not clearly permitted*** by federal law, the "safe harbor" rule is inapplicable as to Plaintiff's UCL claim(s).

Because no federal or state law endorses (or makes lawful) Defendant's misleading and deceptive practices, as alleged in Plaintiffs' CAC, Defendant's "safe harbor" argument necessarily fails. No matter how Defendant attempts to characterize its labeling, branding, marketing and/or advertising of the products at issue, there is no law that endorses the actions Plaintiffs have alleged as deceptive and/or misleading. To the contrary, as being the Ninth Circuit stated in *Williams*:

> The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

552 F.3d at 939-940.[9] Thus, the provision of a "safe harbor" to Defendant simply because it

---

[9]    *See also In re Motor Fuel Temperature Sales Pracs. Litig.,* 534 F. Supp. 2d 1214, 1231-1232 (D. Kan. 2008) (UCL claim brought against fuel retailers for failing to adjust for thermal expansion when they sold motor fuel that was warmer than 60 degrees Fahrenheit was not barred by "safe harbor" defense because defendants did not show that California Legislature had clearly permitted them to sell motor fuel by the gallon without compensating for temperature); *see generally* William L. Stern, Bus. & Prof. C. § 17200 Practice §§ 5:127-5:135, at 5-46 to 5-50.1 (Rutter Group 2010) (collectively "safe harbor" cases).

1  purportedly complied with FDA regulations (which, given the CAC's allegations, clearly

2  presents questions of fact) would be contrary to the law of this Circuit.

3      **B.    Plaintiffs' Claims Are Pled With Requisite Specificity**

4      Defendant contends that Rule 9(b) and its heightened pleading requirements apply and

5  bar Plaintiffs' claims.  Snapple Memo. at 9-11.  In the CAC, however, Plaintiff pled, with

6  exhaustive detail, how Defendant Snapple, through its marketing, labeling and/or branding, has

7  misled and/ or deceived reasonable California consumers; specifically, the requisite "who,

8  what, when, where and how" of Snapple's alleged misconduct.  *Kearns v. Ford Motor Co.,* 567

9  F.3d 1220, 1124 (9th Cir. 2009) (citation omitted).[10]  The relevant allegations identifying

10  Defendant's actionable conduct includes the following:

11      **1.    The "who":**

12      Plaintiffs, by and through counsel, bring this class action both on their own behalf
       and on behalf of the class comprised of all other individuals similarly situated
13      within the State of California, pursuant to California's Unfair Competition Law,
       Business and Professions Code §§ 17200, *et seq.* ("UCL"), California's False
14      Advertising Law, Business and Professions Code §§ 17500, *et seq.* ("CLRA"),

---

[10]    District courts in California have recognized that where alleged misrepresentations occur in printed form, the particularity requirements of Rule 9(b) may be satisfied by "identifying or attaching representative samples of [misleading] materials."  *Von Grabe v. Sprint PCS,* 312 F. Supp. 2d 1285, 1306 n.19 (S.D. Cal. 2003); *accord Faigman v. AT&T Mobility LLC,* 2007 WL 2088561, *5, 2007 U.S. Dist. LEXIS 52192, *16 (N.D. Cal. July 18, 2007).  Paragraphs 2, 3, 6, 19, 29, 30, 31, 32, 33, 36, 37 and 38 of the CAC, as supplemented by Plaintiffs' Request for Judicial Notice (with its color copies of Snapple's bottle labels), more that satisfy Rule 9(b) and Magistrate Judge Stiven's elucidation of its requirements in *Von Grabe,* 312 F. Supp. 2d at 1306 n.19, as echoed by Judge Patel in *Faigman,* 2007 U.S. Dist. LEXIS 52192, *16-17 (plaintiff's class action complaint described defendant's advertisements and submitted additional representative samples of such advertisements).

        Contrary to Snapple's assertion, Snapple Memo. at 9, and as Judge Patel recognized in *Faigman,* 2007 U.S. Dist. LEXIS 52192, *16, Plaintiffs' claim alleging Snapple's violations of the CLRA, *see* CAC, ¶¶ 97-111 (Sixth Cause of Action), "is not strictly required to rise to the level of specificity mandated by Rule 9(b)."  *Id.* (citing *Nordberg v. Trilegiant Corp.,* 445 F. Supp. 2d 1082, 1097-1098 (N.D. Cal. 2006)).

> and The Consumers Legal Remedies Act Civil Code § 1750, *et seq.* ("CLRA"), against Snapple Beverage Corporation ("Snapple"). Plaintiffs assert that Defendant Snapple engaged in thee unfair, unlawful, deceptive and fraudulent practice of marketing, promoting and advertising its drink products as "All Natural" when these drink products contain one or more non-natural or artificial ingredients, such as High Fructose Corn Syrup ("HFCS"). Hereinafter, these drink products will be referred to, collectively, as the "natural products".

CAC, ¶ 1.

> Plaintiffs bring this action both on their own behalf and on behalf of a class compromised of California consumers to redress Defendant Snapple's deceptive, misleading and untrue advertising and unlawful, unfair and fraudulent business acts and practices, and misrepresentations of the quality and contents of the drinks related to the Defendant Snapple's "natural products".

CAC, ¶ 1; *see also* ¶¶ 8-13; ¶¶ 39-48. Therefore, there should be no doubt on Snapple's part as to "who" is bringing this proposed class action and "who" is being sued.

**2. The "what":**

> This action seeks redress for Defendant's deliberate, unlawful, mislabeling and misbranding of drink products as being "All Natural", or similar misrepresentations of Snapple drink products which contain the artificial ingredient, High Fructose Corn Syrup ("HFCS").

CAC, ¶19; *see also* ¶¶ 20-38; ¶¶ 39-48. Therefore, there should be no doubt on Snapple's part as to "what" misconduct is alleged by plaintiffs in the CAC.

**3. The "when":**

> Plaintiffs bring this class action for California consumers pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs bring this action on behalf of themselves and all members of the following class comprised of:

>> All persons in California who purchased for personal or household consumption any of Defendants' "All Natural Products" which contained High Fructose Corn Syrup during the "Class Period" and which were marketing, advertised, branded or labeled as being "All Natural" or similar terms.

CAC, ¶ 39.

>> The "Class Period" is defined as being the four (4) years immediately preceding the original filing of the action on March 4, 2009.

CAC, ¶ 41. Again, the "when" of Snapple's alleged misconduct is clearly alleged in the CAC.

### 4.    The "where" and "how":

Finally, Paragraphs 19-38, 39-48, 50-60, 63-69, 72-78, 81-88, 90-95 and 98-109 of the CAC describe with particularity Defendant's deceptive and misleading labeling, marketing, advertising and promoting of its "All Natural" drink products—the "where" and "how" of Snapple's alleged misconduct. Thus, Plaintiffs' allegations of Snapple's wrongdoing or misconduct, as set forth in the CAC, not only satisfy Rule 9(b)'s requirements but also satisfy its paramount purpose: the CAC clearly provides Snapple with adequate notice to allow it to defend the charges. Given the above-referenced decisions in *Williams,* 552 F.3d at 939-940, and *Hitt,* 2009 U.S. Dist. LEXIS 16871, **1-2, 16-19, it cannot be gainsaid that Plaintiffs initiated this proposed class action as a pretext for the discovery of unknown wrongs. *See Kearns,* 567 F.3d at 1125.

Defendants' argue that the Ninth Circuit's decision in *Kearns,* 567 F.3d at 1124-1125, mandates dismissal of Plaintiffs' claims for failure to meet Rule 9(b)'s particularity requirements. However, *Kearns* did nothing more than affirm the Ninth Circuit's previous holding in *Vess v. Ciba-Geigy Corp.,* 317 F.3d 1097 (9th Cir. 2003).[11] As set forth above, Plaintiffs have sufficiently pled the "who, what, when, where and how" of Defendant's alleged misconduct. As Judge Pregerson analyzed this precise issue in *Pom Wonderful,* 642 F. Supp. 2d at 1124:

---

[11] In *Kearns,* the district court granted plaintiff leave to file an amended complaint after granting defendant's motion to dismiss. 567 F.2d 1123-1124. Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). Thus, should this Court find merit in Defendant's assertion that Plaintiffs have failed to plead their state law claims with the required specificity, Plaintiffs would respectfully request leave to amend the CAC. *See Stickrath v. Globalstar, Inc.,* 527 F. Supp. 2d 992, 995 (N.D. Cal. 2007).

Plaintiff alleges that in April 2007, Defendant introduced its Beverage for the first time under the title "Cranberry and Pomegranate," which misrepresented the product's ingredients because it contains little or no pomegranate juice. Plaintiff alleges this title was used on the label of Defendant's product, the Beverage, with the result of deceiving consumers. Plaintiff also alleges that the Beverage was marketed as "cranberry and pomegranate" juice on its website - www.oceanspray.com. These allegations are sufficient to establish the "time, place, and specific content" requirements of Rule 9(b).

The Court finds that Plaintiff has satisfied its burden of pleading under Rule 9(b).

*Id.* (record citations omitted).  *See also Germain v. J.C. Penney Co.,* 2009 WL 1971336, 2009 U.S. Dist. LEXIS 60936, *12-13 (C.D. Cal. July 6, 2009) (proposed class action alleging that defendants' advertisements for promotion of Dockers men's apparel were false and misleading; Judge Snyder "concludes that plaintiffs have met the heightened pleading standard of Rule 9(b)" because they "sufficiently 'identified the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations'") (quoting *Walling v. Beverly Enterprises,* 476 F.2d 393, 397 (9th Cir. 1973)).  Snapple does not contend that it cannot prepare an adequate answer to the CAC.  Snapple Memo. at 9-11.  Thus, Defendant's Rule 9(b) challenge to Plaintiffs' CAC should be rejected by this Court.

**C.     Plaintiffs Have Properly Pled Claims Under The UCL, FAL And CLRA**

Snapple essentially mirrors its "safe harbor" and Rule 9(b) "pleading deficiency" arguments, arguing that Plaintiffs fail to properly assert claims for violations of the UCL, FAL and CLRA.  Snapple Memo. at 11-16.  The UCL, FAL and CLRA expressly prohibit misleading, deceptive and untrue labeling, marketing, advertising and promoting products like Defendant's "All Natural" beverages.  *See, e.g., VP Racing Fuels, Inc. v. General Petroleum Corp.,* 673 F. Supp. 2d 1073, 1081-1083 (E.D. Cal. 2009) (England, J.) (explicating broad scope of UCL and FAL).

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by" the FAL. BUS & PROF. CODE § 17200. Section 17200's disjunctive language requires a separate analysis of each alleged violation. *See Ahmadyar*, 2010 U.S. Dist. LEXIS 28272, *15-16; *VP Racing Fuels*, 673 F. Supp. 2d at 1086-1088 (separately analyzing UCL claims for "unlawful," "unfair" and "fraudulent" acts allegedly committed by defendant). Thus, Plaintiffs assert claims against Snapple for (a) *misleading and deceptive* advertising, *see* CAC, ¶¶ 49-61 (First Cause of Action); (b) *unlawful* business acts and practices, *see* CAC, ¶¶ 71-79 (Third Cause of Action); (c) *unfair* business acts and practices, *see* CAC, ¶¶ 80-88 (Fourth Cause of Action); (d) *fraudulent* business acts and practices, *see* CAC, ¶¶ 89-96 (Fifth Cause of Action). In addition, Plaintiffs assert claims against Snapple for (e) *untrue* advertising, in violation of the FAL, *see* CAC, ¶¶ 62-70 (Second Cause of Action); and (f) violations of the CLRA, *see* CAC, ¶¶ 97-110 (Sixth Cause of Action). *See VP Racing Fuels*, 673 F. Supp. 2d at 1088 (analyzing FAL claim).

Like the FAL, the CLRA is governed by the "reasonable consumer" standard. *Williams*, 552 F.3d at 938. Under this standard, to prevail on a CLRA claim, a plaintiff "must show that members of the public are likely to be deceived." *Id.* "California courts … have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate" on a motion to dismiss. *Id.*; *see also id.* at 939 ("The facts of this case … do not amount to the rare situation in which granting a motion to dismiss is appropriate."); *see also Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-135, 61 Cal. Rptr. 3d 221, 236 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which

usually cannot be made on [a motion to dismiss].") (quoting *McKell v. Washington Mut., Inc.,* 142 Cal. App. 4th 1457, 1472, 49 Cal. Rptr. 2d 227, 240 (2006)). Thus, at a minimum, Plaintiffs should have the opportunity to present evidence, such as a consumer survey, showing that Snapple's labeling and promotion is likely to deceive "reasonable" consumers. *Cf. Johnson & Johnson * Merck Consumer Pharmaceutical Co. v. Smithkline Beecham Corp.,* 960 F.2d 294, 297-298 (2d Cir. 1992) (consumer survey is common means of showing public perception of advertisement's message); *Glow Indus. Inv. v. Lopez,* 252 F. Supp. 2d 962, 999 (C.D. Cal. 2002) (survey evidence is probative of consumer confusion in trademark infringement case).[12]

A similar situation was presented in *Williams,* 552 F.3d 934, where, as noted above, the plaintiff consumers alleged that Gerber had violated the UCL, FAL and CLRA by labeling a food product "all natural" (when, in fact, the food included in HFCS and sugar) and by depicting fruits on the product's label when those fruits were not contained in the product itself. Finding that "the packaging pictures are a number of different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in the product, " and that "the statement that that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false," the Ninth Circuit held that the district court should not have dismissed the class action complaint for failure to state a claim. *Id.* 938-940. *Accord Hitt,* 2009 U.S. Dist. LEXIS 16871, **1-2, 16-19 (denying defendant manufacturer's motion to

---

[12]    Although consumer surveys are a common means of proving the likelihood of deception, the California Court of Appeal has rejected such proof requirements in favor of a more flexible standard of proof that enables the trial court to consider the advertising (or product labeling) itself as the primary evidence of likelihood of deception. *See, e.g., Colgan v. Leatherman Tool Grp., Inc.,* 135 Cal. App. 4th 663, 679, 38 Cal. Rptr. 2d 36, 46 (2006).

dismiss UCL, FAL and CLRA claims in case arising out of promotion of certain drink products as "100% Natural," "All Natural," or "Natural"; plaintiff alleged that beverages labeled as "All Natural" were deceptively labeled because they contain high fructose corn syrup, which is not a natural substance; "the parties should be able to submit evidence to demonstrate whether a reasonable consumer would find the labeling on the subject beverages to be deceptive"). Tellingly, Snapple's brief ignores both the Ninth Circuit's controlling decision in *Williams* and Judge Hayes' persuasive decision in *Hitt*.

Snapple asserts that as a matter of law, other statements found on the back of the labels of their products, albeit printed in a tiny font, cure the misrepresentation on the front of the drink product label. Snapple Memo. at 16. This contention was also answered by the Ninth Circuit in *Williams*. In that case, even though the plaintiff consumers had not read the nutrition label on the back of the product, the Ninth Circuit held that "reasonable consumers should not be expected to look beyond mislabeling representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams*, 552 F.3d at 939. As the court explained, the nutrition information required by FDA "certainly serves some purpose," but the FDA does not "require [] an ingredient list so that manufacturers can mislead consumers and rely on the ingredient list that confirms other representations on the packaging." *Id.* In other words, information set forth in small print on the nutrition label does not cure false and misleading labeling or advertising. Accordingly, these California state law claims should not be dismissed.

### D.     Plaintiffs Have Pled "Unfair" And "Unlawful" Business Practices Under The UCL

Snapple argues the Plaintiffs have not pled sufficient facts to state a claim for "unfair" business practices under the UCL. Snapple Memo. at 15-16. Although the California courts

have "articulated a number of standards to identify 'unfair' conduct under the UCL," they agree that "[w]hat constitutes unfair competition or unfair or fraudulent business practice under any given set of circumstances is a question of fact." *People v. McKale*, 25 Cal. 3d 626, 635, 159 Cal. Rptr. 811, 816, 602 P.2d 731, 736 (1979) (citation omitted).    Thus, the fact-specific question of whether Snapple's conduct is "unfair" under the UCL – as a matter of law, using all of the various tests for unfairness – is not appropriate for resolution on Snapple's motion to dismiss.

Nonetheless, Defendant contends that its false and misleading product labeling is not "unfair" as a matter of law, irrespective of which test for unfairness is used.    "The independent unfairness prong of the UCL is intentionally broad," *Schnall*, 78 Cal. App. 4th at 1166, 93 Cal. Rptr. 2d at 456 (internal quotations omitted), and its language "makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech*, 20 Cal. 4th at 180, 83 Cal. Rptr. 2d at 561, 973 P.2d at 540 (internal quotation marks omitted).    Moreover, in this case other law ***does*** specifically proscribe the conduct at issue:    Both the FAL and CLRA expressly prohibit misleading, deceptive and untrue advertising and labeling.    Because California law prohibits false and misleading marketing practices and labeling, Plaintiff has pled a proper claim under the "unfair" prong of the UCL.

Contrary to Defendant's assertion, Snapple Memo. at 14-15, Plaintiffs' CAC also properly alleges a claim for violations of the UCL's "unlawful" prong.    The "unlawful" prong is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech*, 973 P.2d at 539 (internal quotation marks omitted). Thus, "[a]ny violation of the [FAL] … necessarily violates the UCL." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950, 119 Cal. Rptr. 2d 296, 304, 45 P.3d 243, 250 (Cal. 2002) (internal quotation

marks omitted). The same is true of the CLRA. Because both statutes were allegedly violated

here – indeed, Snapple does **not** contend that Plaintiff has not pled a FAL claim, only that she

lacks standing to pursue it – the UCL claim for "unlawful" business practices simply cannot be

dismissed.

     With regard to their standing to sue, Plaintiffs repeatedly allege in the CAC that they

and Class members purchased, purchased more of, or paid more for, Defendant's drink

products than if the products at issue had not been mislabeled. CAC, ¶¶ 6, 7, 11, 12, 34, 36, 38,

82 and 94 (allegations concerning Plaintiffs' and Class members' purchases of Snapple "All

Natural" drinks and monetary injury therefrom). Contrary to Defendant's assertion, Snapple

Memo. at 11-12, such allegations are more than sufficient to allege the requisite injury-in-fact.

*See, e.g., Koh v. S.C. Johnson & Son, Inc.,* 2010 WL 94265, *2, 2010 U.S. Dist. LEXIS 654, *5

(N.D. Cal. Jan. 6, 2010) (consumer protection class action alleging that defendant manufacturer

marketed and sold Windex in packaging prominently displaying the "Greenlist label," thereby

falsely representing that product is environmentally friendly; plaintiff sufficiently alleged

injury; "Here … plaintiff has sufficiently alleged that he did **not** receive the benefit of the

bargain in that Windex cost more than similar products without misleading labeling.")

(emphasis in original) (citing *Hall v. Time, Inc.,* 158 Cal. App. 4th 847, 854-855, 70 Cal. Rptr.

3d 466, 470-471 (2008) ("plaintiff suffers an injury in fact for purposes of standing under the

UCL when he or she has … expended money due to the defendant's acts of unfair

competition") (collecting cases)); *Monarch Plumbing Co. v. Ranger Ins. Co.,* 2006 WL

2734391, *6, 2006 U.S. Dist. LEXIS 68850, *20 (E.D. Cal. Sept. 25, 2006) (Shubb, J.)

("plaintiff has alleged an injury—higher insurance premiums").

1    **V.    CONCLUSION**

2         For the reasons stated herein, Snapple's Motion to Dismiss Plaintiffs' Corrected

3    Consolidated Class Action Complaint should be denied.

4    DATED:  April 22, 2010

5
                                        BAKER LAW P.C.
6                                       G. RICHARD BAKER
                                        2229 First Avenue North
7                                       Birmingham, AL 35203
                                        Telephone:  (205) 714-7166
8                                       Facsimile:  (205) 252-3536

9                                       JACKSON & TUCKER PC
                                        JOSH TUCKER (*admitted pro hac vice*)
10                                      K. STEPHEN JACKSON (*admitted pro hac vice*)
                                        2229 First Avenue North
11                                      Birmingham, AL 35203
                                        Telephone:  (205) 252-3535
12                                      Facsimile:  (205) 252-3536

13                                      WILENTZ, GOLDMAN & SPITZER, P.A.
                                        KEVIN P. RODDY
14                                      DANIEL R. LAPINSKI (admitted *pro hac vice*)

15

16                                      By: _____
                                              KEVIN P. RODDY
17
                                        90 Woodbridge Center Drive, Suite 900
18                                      Woodbridge, NJ  07095
                                        Telephone:  (732) 636-8000
19                                      Facsimile:  (732) 726-6686

20                                      **Interim Lead Counsel for Plaintiffs and the
                                        Proposed Class**
21

22

23

24

25

26

27

28