UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

FRANCIS VON KOENIG, GUY
CADWELL, individually and on
behalf of all others similarly
situated,

2:09-cv-00606 FCD EFB

Plaintiffs,

v.                                    MEMORANDUM AND ORDER

SNAPPLE BEVERAGE CORPORATION,

Defendant.
_____/

----oo0oo----

This matter is before the court on defendant Snapple
Beverage Corporation's ("Snapple" or "defendant") motion to
dismiss plaintiffs Frances Von Koenig ("Von Koenig") and Gay
Cadwell's ("Cadwell") (collectively "plaintiffs") Corrected
Consolidated Class Action Complaint pursuant to Federal Rules of
Civil Procedure 12(b)(6) and 9(b).  Plaintiffs oppose the motion.

For the reasons set forth below,[1] defendant's motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

Defendant Snapple is in the business of producing and uniformly marketing beverage products to the general public throughout the United States. (Pls.' Corrected Consolidated Complaint [Docket #67] ("Compl."), filed Dec. 28, 2009, ¶ 20.) Plaintiffs Von Koenig and Cadwell purchased and consumed defendant's drink products between March 4, 2005 and March 4, 2009. (Id. ¶¶ 10-11, 41.)

Plaintiffs bring this action both on their own behalf and on behalf of a class comprised of California consumers seeking to redress defendant Snapple's allegedly deceptive, misleading, and untrue advertising and unlawful, unfair, and fraudulent business acts and practices and misrepresentations of the quality and contents of the drinks related to defendant Snapple's "natural products." (Id. ¶ 1.) Plaintiffs allege that as part of a "scheme" to make its "natural products" more appealing to consumers, boost sales, and increase profits, Snapple prominently stated in marketing, advertising, labeling, and packaging that its products were "All Natural." (Id. ¶ 2.) Specifically, plaintiffs allege that by using an "All Natural" marketing strategy, Snapple implies that its products are superior to, better than, more valuable, and more nutritious than competing products. (Id. ¶ 5.) Plaintiffs contend that as a result of

---

[1] Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. L.R. 230(g)

this marketing, advertising, labeling, and packaging, a reasonable California consumer would be under the impression and belief that defendant's drink products did not contain High Fructose Corn Syrup ("HFCS"). (<u>Id.</u> ¶ 3.)  Defendant does not mention that its drink products contain HFCS, except in inconspicuous and hard-to-read type in the "Ingredients" statement on the back or sides of its products. (<u>Id.</u> ¶ 32.) Plaintiffs further contend that as a result of this marketing strategy, plaintiffs and other members of the class purchased, purchased more of, or paid more for defendant's drink products than if the products were labeled differently and that they would have made different purchasing decisions had they known that the drink products contained HFCS. (<u>Id.</u> ¶ 6.)

Plaintiffs contend that HFCS does not occur naturally; rather, it is produced by milling corn to produce corn starch, processing the corn starch to yield corn syrup, which is almost entirely glucose, and then adding enzymes that change the glucose to fructose. (<u>Id.</u> ¶ 21.)  The resulting syrup contains 90% fructose and is known as HFCS 90. (<u>Id.</u> ¶ 21.)  To make other common forms of HFCS, the HFCS 90 is mixed with 100% glucose corn syrup in the appropriate ratios to form the desired HFCS. (<u>Id.</u> ¶ 22.)

Plaintiffs also allege that Snapple uses HFCS in its drink products for a variety of reasons, all of which benefit its monetary interests. (<u>Id.</u> ¶ 26.)  First, HFCS is often cheaper to use than alternative sweeteners due to the relative abundance of corn and the relative lack of sugar beets, as well as farm subsidies and sugar import tariffs in the United States. (<u>Id.</u> ¶

3

26.)  Second, HFCS is also easier to blend and transport because it is a liquid.  (Id.)  Third, HFCS usage leads to products with a much longer shelf life.  (Id.)  Plaintiffs assert that the complicated process used to create HFCS does not occur in nature and that the molecules in HFCS were not extracted from natural sources, but instead were created through enzymatically catalyzed chemical reactions in factories.  (Id. ¶¶ 27-28.)  Therefore, plaintiff contends that any product containing HFCS cannot be called "All Natural" and that such language is deceptive and misleading to California consumers.  (Id. ¶¶ 27, 30.)

On April 13, 2009, plaintiff Von Koenig filed her initial class action complaint in this court.  On August 21, 2009, plaintiff Cadwell filed his initial class action complaint, alleging claims identical to those raised by Von Koenig, in the Southern District of California.  The Southern District transferred Cadwell's suit to this court, where the two actions were consolidated on December 11, 2009.  Plaintiffs filed the Corrected Consolidated Class Action Complaint[2] on December 28, 2009, alleging violations of (1) California Business & Professions Code § 17500 et seq.[3] arising out of misleading and deceptive advertising; (2) California Business & Professions Code § 17500 et seq. arising out of untrue advertising; (3) California

---

[2]     Plaintiffs originally filed a consolidated complaint on December 21, 2009.  The Corrected Consolidated Class Action Complain eliminated Dr. Pepper Snapple Group as a defendant.

[3]     These sections are referred to as California's False Advertising Law ("FAL").

4

Business & Professions Code § 17200 et seq.[4] arising out of
unlawful business acts and practices; (4) California Business &
Professions Code § 17200 et seq. arising out of unfair business
acts and practices; (5) California Business & Professions Code §
17200 et seq. arising out of fraudulent business acts and
practices; and (6) California Civil Code § 1750 et seq., the
Consumers Legal Remedies Act (the "CLRA").  Plaintiff seek actual
and punitive damages, injunctive relief, and attorneys fees and
costs.

**STANDARD**

Under Federal Rule of Civil Procedure 8(a), a pleading must
contain "a short and plain statement of the claim showing that
the pleader is entitled to relief."  See Ashcroft v. Iqbal, 129
S. Ct. 1937, 1949 (2009).  Under notice pleading in federal
court, the complaint must "give the defendant fair notice of what
the claim is and the grounds upon which it rests."  Bell Atlantic
v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations
omitted).  "This simplified notice pleading standard relies on
liberal discovery rules and summary judgment motions to define
disputed facts and issues and to dispose of unmeritorious
claims."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the
complaint must be accepted as true.  Cruz v. Beto, 405 U.S. 319,
322 (1972).  The court is bound to give plaintiff the benefit of
every reasonable inference to be drawn from the "well-pleaded"
allegations of the complaint.  Retail Clerks Int'l Ass'n v.

---

[4]     These sections are referred to as California's Unfair
Competition Law ("UCL").

Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555; Iqbal, 129 S. Ct. at 1950 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)).  Only where a plaintiff has failed to "nudge [his or

1  her] claims across the line from conceivable to plausible," is

2  the complaint properly dismissed.  Id. at 1952.  While the

3  plausibility requirement is not akin to a probability

4  requirement, it demands more than "a sheer possibility that a

5  defendant has acted unlawfully."  Id. at 1949.  This plausibility

6  inquiry is "a context-specific task that requires the reviewing

7  court to draw on its judicial experience and common sense."  Id.

8  at 1950.

9                          **ANALYSIS**

10 **A.   Requests for Judicial Notice**

11      In ruling upon a motion to dismiss, the court may consider

12 matters which may be judicially noticed pursuant to Federal Rule

13 of Evidence 201.  See Mir v. Little Co. of Mary Hospital, 844

14 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers

15 Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D.

16 Cal. 1998).  Rule 201 permits a court to take judicial notice of

17 an adjudicative fact "not subject to reasonable dispute" because

18 the fact is either "(1) generally known within the territorial

19 jurisdiction of the trial court or (2) capable of accurate and

20 ready determination by resort to sources whose accuracy cannot

21 reasonably be questioned."  Fed. R. Evid. 201(b).  The court can

22 take judicial notice of matters of public record, such as

23 pleadings in another action and records and reports of

24 administrative bodies.  See Emrich v. Touche Ross & Co., 846 F.2d

25 1190, 1198 (9th Cir. 1988).

26      "Even if a document is not attached to a complaint, it may

27 be incorporated by reference into a complaint if the plaintiff

28 refers extensively to the document or the document forms the

                              7

1  basis of the plaintiff's claim."  <u>United States v. Ritchie</u>, 342

2  F.3d 903, 908 (9th Cir. 2003).   "The defendant may offer such a

3  document, and the district court may treat such a document as

4  part of the complaint, and thus may assume that its contents are

5  true for purposes of a motion to dismiss under Rule 12(b)(6)."

6  <u>Id.</u>  The policy concern underlying the rule is to prevent

7  plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately

8  omitting references to documents upon which their claims are

9  based."  <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 706 (9th Cir. 1998).

10      Plaintiffs' complaint alleges several causes of action that

11  are premised on the labels affixed to defendant's drink products

12  during the relevant time period.  Both plaintiffs and defendants

13  request judicial notice of the label from a bottle of Acai

14  Blackberry juice drink, and plaintiffs request judicial notice of

15  the labels from a bottle of Peach iced tea and from a bottle of

16  Raspberry iced tea.  Because these labels form the basis of the

17  relevant causes of action, the court considers them for the

18  purpose of defendant's motion to dismiss.

19      Defendant also requests that the court take judicial notice

20  of letters from the Food and Drug Administration (the "FDA")

21  regarding the use of the term "natural."  One of the letters,

22  dated December 12, 2005, is a response to a citizen petition

23  requesting that the FDA clarify the use of the term "All

24  Natural."  (Ex. C to Hile Decl.)  This response letter is a

25  public record issued in accordance with 21 C.F.R. § 10.30(e)(3).[5]

26

27          [5]   This section provides that "[t]he decision will be
    placed in the public docket file in the office of the Division of
28                                                  (continued...)

Another letter is a response, dated July 3, 2008, to the
President of the Corn Refiners Association request for the FDA's
reconsideration of its position on the use of the term "natural"
to describe products containing HCFS.  (Ex. A to Decl. of Norman
C. Hile in Supp. of Req. for Judicial Notice ("Hile Decl."),
filed Jan. 4, 2010.)  This is an opinion letter issued by a
Supervisor within the FDA's Center for Food Safety and Applied
Nutrition and is a part of the agency's official records.  (See
Def.'s Response to Objections to Req. for Judicial Notice
("Response"), filed Apr. 30, 2010, at 2; Ex. 1 to Response.)  The
remaining letters are warning letters to various corporations
regarding their use of the term "natural."  (Ex. D-F to Hile
Decl.)  The warning letters are matters of public record,
available on the FDA website, http://www.fda.gov/ICECI/
EnforcementActions/WarningLetters.  Accordingly, the court
considers these letters for purposes of the motion to dismiss.

**B.   Safe Harbor Rule**

Defendant contends that plaintiffs' claims are barred by the
safe harbor exception to California consumer protection laws.[6]
Specifically, defendant asserts that the challenged conduct is

---

[5](...continued)
Dockets Management and may also be in the form of a notice
published in the Federal Register."  21 C.F.R. § 10.30(e)(3).

[6]     Defendant acknowledges that no case law has addressed
whether the safe harbor rule applies to claims brought under
California's False Advertising Law, California Business &
Professions Code § 17500 et seq..  However, because, as set forth
*infra*, the court concludes that federal law does not authorize
the conduct at issue, the court need not reach this issue.

9

1  authorized by binding FDA policy regarding use of the term
2  "natural."

3       California's Unfair Competition Law ("UCL"), California
4  Business & Professions Code § 17200 et seq., is broad in scope.
5  Cal-Tech Comm'ns, Inc. v. Los Angeles Cellular Tele. Co., 20
6  Cal. 4th 163, 180 (1999).  By using broad and sweeping language,
7  the Legislature intended "to permit tribunals to enjoin on-going
8  wrongful business conduct in whatever context such activity might
9  occur" and "to deal with the innumerable new schemes which the
10 fertility of man's invention would contrive."  Id. at 181
11 (internal quotations and citation omitted).

12      However, "[w]hen specific legislation provides a 'safe
13 harbor,' plaintiff may not use the general unfair competition law
14 to assault that harbor."  Id. at 182.  Where state or federal law
15 "has permitted certain conduct or considered a situation and
16 concluded no action should lie, courts may not override that
17 determination."  Id.  In sum, a plaintiff may "not 'plead around'
18 and 'absolute bar to relief' simply 'by recasting the cause of
19 action as one for unfair competition.'"  Id. (quoting Mfr.'s Life
20 Ins. Co. v. Superior Court, 10 Cal. 4th 257, 283 (1995)).

21      The safe harbor rule does not bar a claim simply because
22 some other statute does not provide for the action or prohibit
23 the challenged conduct.  Id. at 182-83.  "There is a difference
24 between (1) not making an activity unlawful, and (2) making that
25 activity lawful."  Id. at 183.  Acts that are expressly
26 considered lawful by the legislature are not actionable under the
27 safe harbor rule.  However, other unfair acts may be actionable
28 "even if the Legislature failed to proscribe them in some other

10

provision.  Id.; see Hauk v. JP Morgan Chase Bank USA, 552 F.3d
1114, 1122 (9th Cir. 2009) ("To forestall an action under the
unfair competition law, another provision must actually 'bar' the
action or clearly permit the conduct.").

It is well-established that both federal statutes and
federal regulations properly adopted in accordance with statutory
authorization form the basis of federal law.  See New York v.
Fed. Commc'n Comm'n, 486 U.S. 57, 63 (1988); Hillsborough County,
Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 713 (1985);
Brannan v. United Student Aid Funds, Inc., 94 F.3d 1260, 1263
(9th Cir. 1996).  Courts have also concluded that, "in
appropriate circumstances, federal agency action taken pursuant
to statutorily granted authority short of formal, notice and
comment rulemaking may also have" the force of federal law in
determining whether federal law preempts state law."  Fellner v.
Tri-Union Seafoods, L.L.C., 539 F.3d 237, 243 (3d Cir. 2008)
(noting that agency adjudications could have the force of law
because agencies can choose to address issues either through
rule-making or adjudication); Holk v. Snapple Beverage Corp., 575
F.3d 329, 340 (3d. Cir. 2009); NCNB Texas Nat'l Bank v. Cowden,
895 F.2d 1488, 1497-99 (5th Cir. 1990).  Indeed, the Supreme
Court has noted that "[i]t is fair to assume generally that
Congress contemplates administrative action with the effect of
law when it provides for a relatively formal administrative
procedure tending to foster the fairness and deliberation that
should underlie a pronouncement of such force."  United States v.
Mead Corp., 533 U.S. 218, 230 (2001).

1   The Third Circuit recently held that the FDA's policy
2   statements on the use of the word "natural" as well as several
3   warning letters in which the FDA told a food or beverage
4   manufacturer to remove the term "natural" from one of its labels
5   were insufficient to accord the FDA's policy the weight of
6   federal law.  Holk, 575 F.3d at 340-42.  In Holk, as in this
7   case, the plaintiff brought several state law claims against
8   defendant Snapple arising out of the use of the term "All
9   Natural" on its labels when the products contained HFCS.  Id. at
10  331-32.  Contending that such claims were preempted by federal
11  law, Snapple asserted that the FDA had adopted a policy regarding
12  the use of the term "natural" that would be undermined by the
13  plaintiff's suit.  Id. at 339.  The court noted that in 1991,
14  when announcing that it was considering defining the term
15  "natural" for the purpose of future rulemaking, the FDA recounted
16  its "informal policy" as follows:

17      [T]he agency has considered "natural" to mean that
        nothing artificial or synthetic (including colors
18      regardless of source) is included in, or has been added
        to, the product that would not normally be expected to
19      be there.

20  Id. at 340 (quoting Food Labeling: Nutrient Content Claims,
21  General Principles, Petitions, Definition of Terms, 56 Fed. Reg.
22  60,421, 60,466 (Nov. 27, 1991).  In 1993, after soliciting and
23  receiving comments on several issues to be considered in
24  establishing a definition, the FDA declined to adopt a definition
25  of the term "natural" or to prohibit its use, recognizing that
26  the use of the term "is of considerable interest to consumers and
27  industry."  Id. at 340-41 (citing Food Labeling: Nutrient Content
28  Claims, General Principles, Petitions, Definition of Terms;

12

Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food, 58 Fed. Reg 2,302, 2,397, 2,407 (Jan. 6, 1993). The FDA acknowledged that "the ambiguity surrounding use of [the] term that results in misleading claims could be abated" if it was adequately defined. 58 Fed. Reg. at 2,407. However, "[b]ecause of resource limitations and other agency priorities," the FDA declined to undertake rulemaking and stated that it would maintain its current policy. Id. The Holk court reasoned that the FDA's failure to adopt a formal definition of the term "natural," even after it recognized the importance of the term and its present ambiguity, weighed heavily against a finding that the FDA's policy, arrived at without the benefit of public input or formal procedures, should be accorded the weight of federal law. 575 F.3d at 340-42.

The Third Circuit also considered and rejected Snapple's argument that the FDA's enforcement of the informal policy is sufficient to give it the effect of law. Id. at 341-42. Snapple submitted the same warning letters to the Holk court for consideration as it submitted to this court.[7] These letters demonstrated, in relevant part, that the FDA has told food and beverage manufacturers to remove the term "natural" from one of its labels for violating the FDA policy on the use the term. See id. at 341. However, the Third Circuit noted that the inquiry into whether agency action has the force of law is focused predominantly "on the process by which the agency arrived at its

---

[7]     Defendant also submitted another letter to this court that was not before the Holk court. (See Ex. C to Hile Decl.) However, this additional submission does not alter the court's analysis.

decision, rather than on what happened after the decision was made." <u>Id.</u> at 342.  The court concluded that "the deficiencies inherent in the process by which the FDA arrived at its policy on the use of the term 'natural' are simply too substantial to be overcome by isolated instances of enforcement." <u>Id.</u>

Finally, the Third Circuit rejected Snapple's argument that a July 2008 letter from a FDA official, also submitted by defendant in this case, is entitled to weight because the letter was not issued as part of any formal rulemaking or adjudication and was not subject to notice and comment. <u>Id.</u> at 342 n.6.  The court noted that the letter was issued in response to a question from interested parties, not in the context of an enforcement action.  Under the circumstances, the court concluded that this letter also lacked "the relatively formal procedure and 'fairness and deliberation' to suggest that Congress intended this agency action to bear the force of federal law." <u>Id.</u>

The court finds the Third Circuit's conclusion that the FDA's policy did not amount to federal law for purposes of preemption persuasive in analyzing whether federal law bars plaintiffs' claims in this case pursuant to the safe harbor rule. As set forth above, the safe harbor rule applies only where "the Legislature has permitted certain conduct or considered a situation and concluded no action should apply"; as such, the safe harbor rule applies only where there is a law that expressly authorizes the activity.  Where such a law exists, it, in essence, preempts broader consumer protection claims.  <u>See</u> <u>Cel-Tech Commc'ns, Inc.</u>, 20 Cal. 4th at 182 ("Specific legislation may limit the judiciary's power to declare conduct unfair.")

Accordingly, the court finds that the determination of whether federal policy is to be accorded the weight of federal law for purposes of the application of the safe harbor rule is analogous to that same determination for purposes of preemption.[8]

Furthermore, the court concludes, in accordance with the Third Circuit, that the FDA's policy regarding the use of the term "natural" does not have the force of law.   Neither the FDA policy statement set forth in 1993 nor the July 2008 FDA letter regarding the use of the term "natural" were the result of a formal, deliberative process akin to notice and comment rulemaking or an adjudicative enforcement action.   Indeed, the FDA acknowledged that "the ambiguity surrounding use of [the] term that results in misleading claims could be abated" if it was adequately defined, but declined to engage in the rulemaking process.   That the FDA has subsequently enforced this policy on a handful of occasions does not change the nature of the FDA's formation of its policy regarding the term "natural."

Because the court concludes that the FDA's policy cannot be accorded the weight of federal law for purposes of the safe harbor rule, there is no law which expressly authorizes

---

[8]     Defendant's reliance on the unpublished decision Williams v. Washington Mut. Bank, is misplaced.   No. CIV 07-2418, 2008 WL 115097 (E.D. Cal. Jan. 11, 2008).   In Williams, the court primarily relied on the Official Staff Commentary to Regulation Z in determining whether the defendant's alleged conduct was expressly permitted by law for purposes of the safe harbor rule. In relying upon this Commentary, the Williams court noted that the Supreme Court has expressly stated that "[u]nless demonstrably irrational, Federal Reserve Board staff opinion construing the Act or Regulation should be dispositive . . . ." Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 (1980). Defendant has failed to cite any authority to support a conclusion that FDA policy or staff opinion should be accorded such weight.

1  defendant's conduct.  Accordingly, defendant's motion to dismiss

2  plaintiffs' complaint on this basis is without merit.

3  **C.    Failure to Plead Fraud with Particularity**

4       Defendant also contends that plaintiffs' complaint should be

5  dismissed for failure to comply with the heightened pleading

6  requirements of Federal Rule of Civil Procedure 9(b) for claims

7  grounded in fraud.

8       A court may dismiss a claim grounded in fraud when its

9  allegations fail to satisfy Rule 9(b)'s heightened pleading

10 requirements.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107

11 (9th Cir. 2003).  Therefore, plaintiff "must state with

12 particularity the circumstances constituting fraud."  Fed. R.

13 Civ. P. 9(b).  In other words, the plaintiff must include "the

14 who, what, when, where, and how" of the fraud.  Id. at 1106

15 (citations omitted).  A plaintiff must therefore "state the time,

16 place, and specific content of the false representations as well

17 as the identities of the parties to the misrepresentations."

18 Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393,

19 1401 (9th Cir. 1986).  The plaintiff must also "set forth what is

20 false or misleading about a statement, and why it is false."

21 Decker v. Glenfed, Inc., 42 F.3d 1541, 1548 (9th Cir. 1994).

22      A central purpose of Rule 9(b) is to ensure that defendants

23 accused of the conduct specified have adequate notice of what

24 they are alleged to have done, so that they may defend against

25 the accusations.  Kearns v. Ford Motor Co., 567 F.3d 1120, 1124-

26 25 (9th Cir. 2009) (noting that Rule 9(b) also serves to protect

27 the reputation of those charged with fraud and to prohibit

28 plaintiffs from unilaterally imposing enormous social and

16

1   economic costs on the court, the parties, and society without a

2   factual basis); <u>Concha v. London</u>, 62 F.3d 1493, 1502 (9th Cir.

3   1995). "Without such specificity, defendants in these cases

4   would be put to an unfair advantage, since at the early stages of

5   the proceedings they could do no more than generally deny any

6   wrongdoing." <u>Concha</u>, 62 F.3d at 1502 (citing <u>Semegen v. Weidner</u>,

7   780 F.2d 727, 731 (9th Cir. 1985)).

8       Plaintiffs allege that between March 4, 2005 and March 4,

9   2009, defendant used terms such as "All Natural" and other

10  similar terms in labeling its drink products.   (Compl. ¶¶ 30,

11  41.)  Plaintiffs have submitted examples of the labels from a

12  bottle of Acai Blackberry juice drink, from a bottle of Peach

13  iced tea and from a bottle of Raspberry iced tea, all of which

14  contain the term "All Natural."  Plaintiffs allege that this

15  labeling deceived consumers because the drink products contained

16  HFCS, which they assert is not a natural product. (<u>Id.</u> ¶ 28-29.)

17  Plaintiffs further allege that if they had not been deceived by

18  the labels on the products, they would not have purchased

19  defendant's product, but would have purchased alternative drink

20  products. (<u>Id.</u> ¶ 38.)  These allegation are sufficient to

21  establish the "time, place, and specific content" requirements of

22  Rule 9(b). <u>See</u> <u>Pom Wonderful LLC v. Ocean Spray Cranberries,</u>

23  <u>Inc.</u>, 642 F. Supp. 2d 1112, 1124 (C.D. Cal. 2009) (holding that

24  the plaintiff adequately pled false advertising claims with

25  particularity where the complaint alleged when the defendant

26  introduced the drink product, how it was labeled, and what was

27  misleading about the label); <u>see also</u> <u>Germain v. J.C. Penney Co.</u>,

28  No. CV 09-2847, 2009 WL 1971336 (C.D. Cal. July 6, 2009) (holding

that the plaintiffs pled false advertising claims with
particularity where the complaint identified who was responsible
for the conduct alleged and the defendants could "prepare an
adequate answer from the allegations"); cf. Kearns, 567 F.3d at
1126 (holding that plaintiff failed to plead fraud with
particularity where he failed to specify what advertisements he
was exposed to, what those advertisements specifically stated,
and when or by whom he was told that the product at issue was the
best available and most rigorously tested).

Accordingly, defendant's motion to dismiss plaintiffs'
claims arising out of the alleged deceptive labeling for failure
to plead fraud with particularity is DENIED.  However, to the
extent plaintiffs seek to bring claims based upon other
advertisements and marketing or based upon other labels not
submitted to the court, defendant's motion is GRANTED with leave
to amend.

**D.   Failure to State a Claim**

Finally, defendant moves to dismiss plaintiffs' complaint
for failure to state a claim on the grounds that (1) plaintiffs
cannot show injury or damages and cannot establish entitlement to
restitution under the UCL or FAL; (2) plaintiffs have failed to
plead a viable basis for their UCL "unlawful conduct" claim; and
(3) plaintiffs have failed to plead a viable basis for their UCL
"unfair" business practices claim.

**1.   Restitution Injury or Damages**

Under the UCL and FAL, claims may only be brought by a
"person who has suffered injury in fact and has lost money or
property as a result of a violation."  Cal. Bus. & Prof.Code §§

18

17204, 17535.  Similarly, under the CLRA, a consumer must be able to allege that she suffered damages "as a result of the use or employment by any person of a method, act, or practiced declared to be unlawful" pursuant to the statute.  Cal. Civ. Code § 1780. "Courts have held that being induced to purchase a product one would not otherwise have purchased is not loss of money or property within the meaning of the statute as long as one still receives the benefit of the bargain."  Koh v. S.C. Johnson & Son, Inc., No. C-09-0927, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010); see Hall v. Time, 158 Cal. App. 4th 847, 854-55 (2008) (finding plaintiff did not suffer injury because, although he expended money, "he received a book in exchange" and "did not allege he did not want the book, the book was unsatisfactory, or the book was worth less than what he paid for it"); Animal Legal Defense Fund v. Mendes, 160 Cal. App. 4th 136, 147 (2008); see also Germain, 2009 WL 1971336 (holding that the plaintiff failed to plead restitution injury where the consumer received merchandise which he retained and used, even though she did not receive a free plane ticket).  However, a plaintiff may sufficiently allege injury where she contends that she did not receive the benefit of the bargain because a purchased product cost more than similar products without misleading labeling.  Id. (citing Hall, 158 Cal. App. 4th at 854 (noting a plaintiff has standing when he pays higher insurance premiums because he "expended money due to the defendant's acts of unfair competition")).

In this case, in addition to asserting that they would have purchased alternative drink products, plaintiffs also allege that they paid more for defendant's drink products and would have been

willing to pay less if they had not been misled by defendant's
labeling.  (Compl. ¶¶ 6, 7, 12, 34, 36, 38, 82, 94.)  As such,
plaintiffs have alleged that they did not receive the benefit of
the bargain because they assert that the product they received
was worth less than what they paid for it.  See Koh, 2010 WL
94265 at *2 (holding that the plaintiff sufficiently alleged
injury under the UCL, FAL, and CLRA, where he asserted that the
product cost more than similar products without misleading
labeling).  They also allege that they were seeking a product
without HFCS and thus, defendant's drink product was
unsatisfactory.  Cf. Hall, 158 Cal. App. 4th at 855.  Moreover,
plaintiffs allege that defendant benefitted from these purchases
by selling more drink products, which plaintiffs found
unsatisfactory, at a higher price.  (Compl. ¶¶ 59, 82, 109.)
Plaintiffs seek the difference in price between the product
received and its value.  (Compl., Relief Demanded, ¶ E (seeking
"[d]isgorgement of the excessive and ill-gotten monies obtained
by Defendant Snapple as a result" of its labeling practices));
Cf. Germain, 2009 WL 1971336, at *7 (holding that the plaintiff
failed to allege restitution injury where he sought the return of
all monies, not the difference in price between the apparel
received and its value).[9]  Accordingly, plaintiffs have
sufficiently alleged that, due to defendant's labeling practices,
they suffered a loss that benefitted defendants through more

---

[9]     To the extent plaintiffs seek all money paid, such
damages are not covered under the UCL or FAL because they do not
constitute "lost money or property," because, under the current
factual allegations, it is reasonable to infer that they received
at least some benefit from the purchase and consumption of
defendant's drink products.

sales and a higher profits.   See <u>Shersher v. Superior Court</u>, 154
Cal. App. 4th 1491, 1500 (2007) (holding that the plaintiff could
recover restitution from a manufacturer even though the product
was purchased from a third-party retailer); <u>Hirsch v. Bank of
Am.</u>, 107 Cal. App. 4th 708 (2003) (concluding that the plaintiff
in a UCL action my obtain restitution from a defendant with whom
the plaintiff did not deal directly where that defendant received
the benefit); <u>cf. id.</u> (holding that the plaintiff failed to
allege restitution injury where the money expended in processing
and mailing forms did not benefit the defendants).

   **2.   Unlawful Conduct**

   The UCL proscribes "unlawful" business practices.   Cal. Bus.
& Prof. Code § 17200.   In doing so, it "'borrows' violations of
other laws and treats them as 'unlawful practices' that the
unfair competition law makes independently actionable."   <u>Cel-Tech
Commc'ns</u>, 20 Cal. 4th at 180 (quoting <u>State Farm Fire & Casualty
Co. v. Superior Court</u>, 45 Cal. App. 4th 1093, 1103 (1996)).

   Plaintiffs allege that defendant's conduct is proscribed by
the CLRA and FAL.   Therefore, plaintiffs have sufficiently
identified the unlawful conduct at issue in their UCL unlawful
business practices claim.[10]

   **3.   Unfair Business Practices**

   The UCL also proscribes unfair business practices.   The
California Supreme Court has noted that "a practice may be deemed
unfair even if not specifically proscribed by some other law.

---

   [10]   Because plaintiffs have alleged a viable basis for
their UCL claim arising out of unlawful conduct, the court does
not reach the merits of defendant's argument regarding breach of
express and implied warranties.

1  Id.  Moreover, California courts "have recognized that whether a

2  business practice is deceptive will usually be a question of fact

3  not appropriate for decision on demurrer."   Williams v. Gerber

4  Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008); see Linear Tech.

5  Corp. v. Applies Materials, Inc., 152 Cal. App. 4th 115, 134-35

6  (2007) ("Whether a practice is deceptive, fraudulent, or unfair

7  is generally a question of fact which requires consideration and

8  weighing of evidence from both sides and which usually cannot be

9  made on demurrer.") (internal quotations omitted).  In Williams,

10  the Ninth Circuit reversed the district court's dismissal of the

11  plaintiffs' UCL, FLA, and CLRA claims arising out of the

12  defendant's labeling of its food products as "made with real

13  fruit juice and other natural ingredients" and describing it as

14  "one of a variety of nutritious Gerber Graduates foods and

15  juices." 552 F.3d at 936.  The court concluded that, based upon

16  these apparently false assertions which conflicted with the

17  ingredient list in small print on the side of the box, the

18  plaintiffs had stated a claim that a reasonable consumer would be

19  deceived by the defendant's packaging.  Id.; see also Hitt v.

20  Arizona Beverage Co., LLC, No. 08-cv-809, 2009 WL 449190 (S.D.

21  Cal. Feb. 4, 2009) (denying the defendant's motion to dismiss the

22  plaintiff's UCL, FAL, and CLRA claims where the plaintiff alleged

23  that a reasonable consumer would find the "All Natural" labeling

24  on the defendant's drink products, which contained HFCS,

25  deceptive).

26     In this case, similar to the allegations in Williams,

27  plaintiffs allege that they were deceived by the labeling of

28  defendant's drink products as "All Natural" because they did not

believe that the products would contain HFCS.  Reading the
allegations in the complaint in the light most favorable to the
plaintiffs and drawing all reasonable inferences therefrom,
plaintiffs have stated a plausible claim that a reasonable
consumer would be deceived by defendant's labeling.

Accordingly, defendant's motion to dismiss plaintiff's
complaint for failure to state a claim is DENIED.

**E.    Injunctive Relief**

Finally, defendant moves to dismiss plaintiffs' request for
injunctive relief on the basis that "it is without dispute that
Snapple no longer labels its HFCS products as natural."  (Def.'s
Reply in Supp. of Mot. to Dismiss, filed Apr. 30, 2010, at 1
n.2.)  There are no factual allegations relating to this
statement nor any submissions of which the court can take
judicial notice.  Accordingly, defendant's motion is DENIED.

CONCLUSION

Thus, for the foregoing reasons, defendant Snapple's motion
to dismiss is GRANTED in part and DENIED in part.  Plaintiffs may
file an amended complaint in accordance with this order in
fifteen (15) days from the date of this order.  Defendants are
granted thirty (30) days from the date of service of plaintiffs'
second amended consolidated complaint to file a response thereto.

IT IS SO ORDERED.

DATED: May 7, 2010

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

23